IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**KELLY E. COPELIN, and his wife,**
**SARA COPELIN**

      **Plaintiffs**

      Vs.                                  Case No. 5:21-cv-05049-PKH

**UNITED STATES OF AMERICA,**

      **Defendant**

## COMPLAINT FOR MEDICAL NEGLIGENCE

The plaintiffs, Kelly E. Copelin and his wife, Sara Copelin (collectively the "Plaintiffs"), states as follows for their cause of action against the defendant, United States of America ("Defendant"):

### PARTIES AND JURISDICTION

1. The Plaintiffs are adult resident citizens of Gravette, Benton County, Arkansas.

2. The Plaintiffs were married on or about November 18, 2017, and have remained legally married to the present.

3. The Defendant operated the VA Medical Center – Fayetteville ("VAMC"), by and through the Department of Veteran's Affairs ("VA"), at all-time relevant to this litigation.

4. Robert M. Levy, MD ("Dr. Levy"), Carol A. Fossey, MD ("Dr. Fossey"), Randall B. Davis, MD ("Dr. Davis"), Dr. Minh-Tri D. Dang ("Dr. Dang"), Paul R. Hendrycy, MD ("Dr.

1

Hendrycy") and Laverne R. Blackwell, MD ("Dr. Blackwell"), among others, provided medical care to Kelly E. Copelin (sometime referred to individually as the "Patient") during and after his admission to the VMAC on or about June 22, 2015 to present.

5. Upon information and belief, Drs. Levy, Fossey, Davis and Blackwell were employed by the Defendant and acting within the course and scope of their employment and/or agency at all time relevant to this litigation.

Dr. Levy provided diagnostic services to the Patient at the VMAC on or about June 22, 2015 during the course and scope of his employment and/or agency with the Defendant. Upon information and belief, at all times herein mentioned, the Defendant held Dr. Levy out to the public in general and to the Patient in particular as possessing the necessary medical skills, knowledge and expertise to provide professional pathology services to the Patient on or about June 22, 2015, in accordance with the recognized standard of acceptable professional practice of similarly situated physicians in Fayetteville, Arkansas and similar communities.

6. This cause of action arises in tort and as a result of harms and losses proximately caused by the negligence of the Defendant in Fayetteville, Washington County, Arkansas, and comes under 28 U.S.C. § 1346(b), 2401 and 2671-2680.

7. This is a proper venue for litigation of all issues in controversy

8. This Court has jurisdiction over the parties.

9. This Court has jurisdiction over the subject matter as it involves a federal question under the Federal Tort Claims Act, 28 U.S.C. § 1346.

10. An administrative claim alleging medical malpractice was properly presented to the Department of Veteran's Affairs. *See* Standard Form 95-F (**Exhibit 1**).

11. To date, the Department of Veteran's Affairs has not formally responded to the Plaintiffs' claim, either admitting or denying the claim.

12. The Patient is electing to proceed as if the claim had been formally denied by the Department of Veteran's Affairs pursuant to 28 U.S.C. § 2675(a).

## FACTUAL BACKGROUND

13. On or about June 22, 2015, the Patient was seen at the VAMC in Fayetteville, Arkansas, with a new complaint of soreness in his right neck area which developed shortly before he was seen by his primary care physician, Dr. Fossey.

14. The VAMC medical records state that Dr. Fossey examined the Patient and diagnosed his condition as a right anterior neck mass.

15. Dr. Fossey scheduled a CT scan.

16. The VAMC medical records show that a contrast enhanced CT scan of the neck was performed on July 29, 2015, and the findings provided by Dr. Blackwell, a radiologist, indicate that there was a "[h]eterogenous enhancing tumor mass arising from the right submandibular gland. Lymphadenopathy along the right side of the neck medial and posteroinferior to the sternocleidomastoid muscle measuring up to 1.9 cm." The primary diagnostic code was suspicious for new malignancy with a need for follow-up.

17. The VAMC ENT consult notes show that on August 5, 2015, Dr. Davis, an otolaryngologist, examined the Patient and noted "CT imaging report of the heterogeneous right submandibular gland mass but none was palpated. Lymphadenopathy present and palpable in the right posterior neck. Of greatest concern to Mr. Copeland *[sic]* is the more superficial neck mass. I recommended that we proceed with a fine-needle biopsy of this mass. He agrees."

18. A fine-needle biopsy was performed on August 5, 2015, by Dr. Davis and the specimen was sent to pathology.

19. The tissue sample from the August 5, 2015 fine-needle biopsy was examined by Dr. Levy on or about August 7, 2015. Dr. Levy's noted a mixed lymphocytic population and

3

further comment that the "[f]indings are most compatible with a reactive lymphadenopathy; however, clinical correlation is indicated to determine if further sampling is required."

20. Upon information and belief, Dr. Levy was chemically impaired when he misinterpreted the fine-needle biopsy on or about August 7, 2015, and failed to properly diagnose the Patient's squamous cell carcinoma.

21. On August 11, 2015, Dr. Davis noted that he called the Patient with the results of the fine-needle aspirate cytology. "The cytology report indicates that this was a mixed population of lymphocytes consistent with a reactive lymph node. As there are other lymph nodes present in the right neck, I need to re-examine [the Patient] for the source of the ongoing infection." Dr. Davis also noted that the Patient told him that he does have problems with his sinuses, and that he would need to examine the Patient's nasopharynx. Dr. Davis asked that the Patient return to see him at some point in the near future.

22. On September 16, 2015, the Patient was seen by Dr. Davis who noted that he could not detect an abnormality in the right submandibular gland on the neck CT scan nor could he clinically palpate any abnormality in the gland. Dr. Davis contacted Dr. Blackwell who then consulted with Dr. Dang, a radiologist, who stated that the submandibular gland appeared normal to him but that the lymphadenopathy in the neck appeared unusual and discussed the fact that sarcoidosis might have something to do with that.

23. Dr. Davis asked the Patient to monitor the lymphadenopathy in his right neck and return if he noticed any enlargement or the development of new nodules.

24. The VAMC medical records note that on August 6, 2016, the Patient notified his primary care team that the right side of his neck had swollen areas as before but larger. An appointment was scheduled with his primary care physician for August 25, 2016.

25. On August 25, 2016, the Patient was seen by Dr. Fossey who assessed the Patient

4

with a recurrence of right facial tenderness and swelling and requested an ENT evaluation.

26. On September 7, 2016, the Patient was seen by Dr. Davis with a chief complaint of swelling and pain of right neck. Dr. Davis noted "There was a right pharyngeal mass that is distorting the soft tissues of the oropharynx with swelling in the area of the right faucial arches and the palatine tonsil. A flexible fiberoptic endoscopy was done and there does not appear to be any surface lesion. So that it would appear that this mass is submucosal. It seems to be centered on the right tonsil area. I reviewed the CT scan that was done last year and this area of interest is obscured by artifact from the fillings in the teeth. There is also lymphadenopathy in the right neck. He has tenderness of the right temporomandibular joint. I discussed this with Mr. Copelin. I told him that there is a mass effect in the right neck. I also told him that I could not see any visible tumor at this time. We need to get a CT scan of the neck and determine the best way to further evaluate this mass. I repeated the ballottement of the submandibular gland and I cannot feel a right submandibular gland mass."

27. Dr. Davis' plan was to proceed with a CT scan of the neck for evaluation of the right pharyngeal mass in the area of the right palatine tonsil.

28. On September 14, 2016, a CT scan of the neck was performed on the Patient and the findings provided by Dr. Dang stated "Right tonsillar 3.5 cm enlarging mass with possible extension into the surrounding structures. Right level I, level II, level III, level V lymphadenopathy. Suggestion of additional contralateral left level II lymph adenopathy. Malignancy such as squamous cell carcinoma is a high concern. Recommend tissue correlation as clinically indicated."

29. VAMC medical records state that on September 20, 2016, Dr. Davis contacted the Patient to discuss the CT scan of the neck. A fine-needle aspiration of the right tonsil was recommended to which the Patient was agreeable.

30. On September 27, 2016, Dr. Davis performed a fine-needle biopsy of the right palatine tonsil mass which was then sent to pathology.

31. Dr. Hendrycy reviewed tissue slides from the September 27, 2016 fine-needle biopsy on September 29, 2016, noted "[f]ine needle aspiration of right palatine tonsillar mass; thin prep cytology, cytology smears and cell block studies: Consistent with nonkeratinizing squamous cell carcinoma."

32. On October 4, 2016, Dr. Davis discussed the results of the fine-needle aspiration with the Patient. Dr. Davis stated that the fine-needle biopsy showed the presence of squamous cell carcinoma and that it appeared as though the patient had carcinoma that spread beyond the tonsil into the surrounding tissue consistent with a T3N2bM0 squamous cell carcinoma of the right tonsil. Treatment was discussed and Dr. Davis recommended an oncology consult to Dr. Mohiuddin through Veterans Health Care System of the Ozarks.

33. Per VAMC medical records, on May 16, 2018, Dr. Hendrycy issued a modified report to change the original August 7, 2015, pathology diagnosis of the right posterior, fine-needle aspiration of the right posterior neck lymph node, cytology smears, and thin prep cytology which was performed by Levy. Levy's original diagnosis stated "mixed lymphocytic population." Dr. Hendrycy's modified report states "Modified diagnosis: Percutaneous needle aspiration of right posterior neck lymph node, cytology smears and thin prep cytology: Suspicious for squamous cell carcinoma. VHSO Comment: Dr. Hendrycy has reviewed this case and believes the slides are diagnostic for a non small cell carcinoma, probably metastatic squamous cell carcinoma to a lymph node. Issuance of this modified report was discussed with Dr. Randall Davis on 05/16/18."

34. The Patient's cancer spread as a direct and proximate result of Dr. Levy's negligent review of the samples taken during the original August 7, 2015 fine-needle aspiration

and failure to properly and timely diagnose the squamous cell carcinoma.

35. As a direct and proximate result of Dr. Levy's negligence, the Patient lost less invasive and harmful treatment options resulting in harms and losses that would not have otherwise occurred but for Dr. Levy's negligence.

36. During his hospitalizations and treatments, the Patient underwent radiation and chemotherapy which caused him to suffer immensely as the direct and proximate result of the Defendant's negligence.

37. The Patient's injuries are permanent.

## CAUSE OF ACTION

38. The Defendant was negligent in the following respects:

a. By negligently and carelessly failing to properly diagnose the Patient's the Patient's squamous cell carcinoma in a timely manner;

b. By failing to have and use that degree of learning and skill ordinarily possessed by other physicians and hospital staff; and

c. By deviating from the recognized standard of acceptable professional practice for similarly situated physicians, nurses and hospital staff in Fayetteville, Washington County, Arkansas and/or similar communities.

39. The Defendant VAMC is vicariously liable for the acts and/or omissions of its employees, servants and agents including, but not limited to, Dr. Levy and other members of its medical, nursing and hospital staff who provided professional service to the Patient.

## HARMS AND LOSSES

40. As a direct and proximate cause of the Defendant's negligence, the Patient suffered serious and permanent physical, mental and emotional injuries.

41. The Patient is entitled to compensation for the harms and losses he suffered as a

result of the Defendant's negligence, including but not necessarily limited to, the following:

    a.    The cost of medical care, services and supplies reasonably required and actually given in the treatment of the Patient as shown by the evidence, and the present cash value of similar services likely to be required in the future;

    b.    The present cash value of lost earning capacity that is likely to be lost in the future as a result of the injuries in question;

    c.    The physical pain and suffering, physical and mental discomfort suffered by the Patient, and the present cash value for pain and suffering likely to be experienced in the future, including anguish, grief, shame and worry;

    d.    Permanent injuries the Patient must live with for the rest of his life that are likely to result in inconvenience and/or the loss of physical vigor;

    e.    Impairment to the Patient's appearance;

    f.    Loss of the normal enjoyments and pleasures of life in the future as well as limitations on the Patient's lifestyle resulting from the injury; and

    g.    Other damages allowed by law.

42.    Sara Copelin is entitled to recover such damages as from the evidence would fairly compensate her for the reasonable value of the loss of services, society, compantionship, and marriage relationship of her husband proximately caused by the negligence of Dr. Levy.

WHEREFORE, premises considered, the Plaintiffs sue the Defendant for compensatory damages in the amount of Seven Million Five Hundred Thousand Dollars ($7,500,000.00), for costs herein, and for all such other and further relief, general and specific, legal and equitable, to which the Patient is entitled by law.

Respectfully submitted:

**BRYAN SMITH & ASSOCIATES**

*/s/ W. Bryan Smith*
W. Bryan Smith (ABN 2017258)
119 South Main Street, Suite 500
Memphis, Tennessee 38103
(901) 450-4990 – telephone
(901) 450-4898 – facsimile
bryan@bluffcitylawyers.com

Bud Whetstone, (ABN 69082)
Whetstone Law Firm
415 N. McKinley Street, Ste. 535
Little Rock, AR 72205
(501) 376-3564
budwhetstone@yahoo.com

*Attorney for Plaintiffs*